UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LAURIE K.,

                Plaintiff,

    -v-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

20-CV-00570-MJR

DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case.  (Dkt. No. 11)

Plaintiff Laurie K.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Disability Insurance Benefits ("DIB") pursuant to the Social Security  Act (the "Act").  Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.   For the following reasons, Plaintiff's motion (Dkt. No. 8) is granted, defendant's motion (Dkt. No. 9) is denied, and the case is remanded for further administrative proceedings.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed an application for DIB on March 9, 2017, alleging a disability onset date of November 4, 2016.   (Administrative Transcript ["Tr."] 85, 183-184).   The application was initially denied on July 13, 2017.  (Tr. 104-115).  Plaintiff timely filed a request for an administrative hearing.  (Tr. 116-117).  A video hearing was held before Administrative Law Judge ("ALJ") David Begley, on January 8, 2019.  (Tr. 48-84).  The ALJ presided over the hearing from Alexandria, Virginia, while the Plaintiff appeared with counsel in West Seneca, New York.  A vocational expert also appeared by telephone. On April 4, 2019, the ALJ issued a decision finding Plaintiff not disabled through the date of the decision.  (Tr. 23-42).   On May 5, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision final.  (Tr. 1-6).  This action followed.

## DISCUSSION

I.      *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts."  *Smith v.*

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

*Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner."  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner."  *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review.  The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant."  *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).  The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve."  *Veino*, 312 F.3d at 588.  While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct.  The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence.  Further, the Commissioner's factual conclusions must be applied to the correct legal standard.  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  Failure to apply the correct legal standard is reversible error.  *Id.*

II.    *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  The

Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he

- 4 -

or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c).  Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions:  first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d).  If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.  Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e).  RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1).  The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f).  If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f).  Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.*

§§404.1520(g)(1), 416.920(g)(1).  If the claimant can adjust to other work, he or she is not disabled.  *Id.* §§404.1520(g)(1), 416.920(g)(1).  If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act.  *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform."  *Carroll*, 705 F.2d at 642.

III.     *The ALJ's Decision*

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since November 30, 2016, the alleged onset date.  (Tr. 28).  At step two, the ALJ found that Plaintiff had the following severe impairments: depression; PTSD; fibromyalgia; and carpal tunnel syndrome.  (Tr. 28-29).  At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 29-31).  Prior to proceeding to step four, the ALJ determined that Plaintiff retained the following RFC:

> [C]laimant has the [RFC] to perform light work . . . except the claimant cannot climb ladders, ropes, or scaffolds. She is further limited to only occasional climbing of ramps and stairs, occasional balancing, stooping, kneeling, crouching, or crawling. The claimant is limited to frequent handling and fingering bilaterally. Avoid concentrated exposure to hazardous machinery, unprotected heights and open flames. The claimant should avoid concentrated exposure to excessive vibration, and to slippery and uneven surfaces. The claimant is limited to performing simple, routine, repetitive tasks, work in a low stress job, defined as being free of fast paced production requirements, no hazardous conditions, only occasional decision making required, and only occasional changes in the work setting. The claimant should have only occasional interaction with coworkers, supervisors, and the general public.

(Tr. 32-36).

At step four of the sequential evaluation, the ALJ concluded that Plaintiff is unable to perform any past relevant work. (Tr. 36). At step five, the ALJ found that Plaintiff is capable of performing jobs that exist in significant numbers in the national economy. (Tr. 37). Accordingly, the ALJ determined that Plaintiff has not been under a disability from November 30, 2016, through the date of the decision. (Tr. 38).

IV.    *Plaintiff's Challenge*

Plaintiff argues, *inter alia*, that the ALJ erred by failing to evaluate properly the medical opinion of her treating rheumatologist, Dr. Michael Weingartner, M.D., and that remand is therefore required. The Court agrees.

20 C.F.R. § 416.927(c) sets forth a two-step procedure that an ALJ must follow in weighing a treating physician's opinion. First, the opinion needs to be evaluated for controlling weight using the two factors under (c)(2) to decide whether to grant controlling weight, that is, if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it will be given controlling weight. If controlling weight is granted to the opinion, the claimant is found disabled and benefits are awarded. This is the treating physician rule.

The Commissioner's regulations require an ALJ to consider the 6 factors under 20 C.F.R. § 416.927(c) in determining how much weight a medical source opinion should receive. *Burgess v. Astrue*, 537 F.3d 117, 129 (2nd Cir. 2008). Even if the ALJ considers

the regulatory factors, but then is not significantly clear in explaining how all the factors are being applied, the case must be remanded. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 631 (W.D.N.Y. June 23, 2011) (citing *Snell v. Apfel*, 177 F.3d 128, 133 (2ⁿᵈ Cir. 1999)).

The Commissioner's regulations at 20 C.F.R. § 416.927(b) state that "[i]n determining whether you are disabled, we will always consider the medical opinions in your case record."  SSR 96-5p6 further requires that "[i]n evaluating the opinions of medical sources on issues reserved to the Commissioner, the adjudicator must apply the applicable factors in 20 CFR 404.1527(d) and 416.927(d)."

In addition, the failure to provide "good reasons" for not crediting the opinion of a claimant's treating physician is a ground for remand.  *Selian v. Astrue*, 708 F.3d 409, 419 (2nd Cir. 2013) (citations omitted).  20 C.F.R. § 416.927(c)(2) states that SSA "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."  "Good reasons" refer to the "overwhelmingly compelling type of critique that would permit the Commissioner to overcome an otherwise valid medical opinion." *McClinton v. Colvin*, 2015 U.S. Dist. LEXIS 117409, at *85 (S.D.N.Y. Sept. 2, 2015) (internal quotations and citations omitted).

Under SSR 96-5p, an opinion by a treating physician on an issue reserved to the Commissioner is never entitled to controlling weight.  The ALJ then has to proceed to the second step under § 416.927(c) and "consider all of the following factors in deciding the weight we give to any medical opinion."

In the instant matter, on December 28, 2018, Dr. Weingartner completed a Fibromyalgia Medical Source Statement.  (Tr. 742-746).  He confirmed he has treated the Plaintiff since April of 2011 and that she meets the criteria for fibromyalgia under the

American College of Rheumatology.  (Tr. 742).  He indicated the Plaintiff has pain in her lumbar, cervical and thoracic spine, as well as bilaterally in her shoulders, arms and legs.  (Tr. 743).  He opined that the Plaintiff would miss on average about three days of work each month due to her impairments or treatment.  (Tr. 745).

The ALJ afforded Dr. Weingarten's opinion partial weight, noting that he reported a good prognosis and did not provide any functional limitations.  (Tr. 35-36). That is the extent of the ALJ's analysis.

While the ALJ is partially correct that Dr. Weingarten did not provide any functional limitations, the ALJ overlooked the fact that Dr. Weingarten opined that Plaintiff would miss three days of work each month.  This is a functional limitation.  The ALJ fails to explain why he did not incorporate this limitation into his opinion.  In fact, there is no mention of it in his decision.  Moreover, this limitation would eliminate all work as the vocational expert testified that missing work more than one day per month on a regular and consistent basis would preclude employment.  (Tr. 77).

Under the Commissioner's own rules, if the ALJ's "RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  Soc. Sec. Ruling 96-8p (1996). *See Dioguardi v. Comm'r of Soc. Sec.,* 445 F. Supp.2d, 288, 297 (W.D.N.Y. 2006).  As such, this matter must be remanded so the ALJ can explain why he did not accept or even address Dr. Weingarten's opinion about absenteeism.

Defendant argues the ALJ explained why he did not include a limitation for absenteeism later in the decision when he weighed the opinion of Physician Assistant Melissa Fanton.  (Tr. 36).  This argument fails for several reasons.

First, this argument does not explain the complete omission of Dr. Weingarten's absenteeism opinion from the ALJ's decision. Dr. Weingarten was the treating physician, but the ALJ offered no reasons, good or otherwise, for not accepting his opinion. The Court is left with uncertainty as to the ALJ's reasoning regarding Dr. Weingarten's opinion or whether he even knew it existed. The Court therefore cannot conduct a meaningful review.[3]

Further, while the ALJ did address absenteeism when he weighed the opinion from PA Melissa Fanton, his analysis falls short. The ALJ stated: "Limitations of off task and absences are not supported by the medical evidence of record." (Tr. 36). The ALJ attempts to support this statement by cherry picking five of Plaintiff's appointments with PA Fanton that showed a generally "normal" examination. (Tr. 36). These appointments were on June and September 2017, and March, June and September of 2018. (Tr. 36).

The ALJ's description of these appointments as "normal" mischaracterizes the record. In June of 2017, the Plaintiff complained of worsening aches and pains, fatigue and confusion. (Tr. 706). She also noted she just got over a fibromyalgia flare up that lasted two weeks. (Tr. 706-708). In September of 2017, she continued to have chronic pain related to her fibromyalgia. (Tr. 703). In March of 2018, the Plaintiff reported that her symptoms were not well controlled and she was having mid-sternal chest pain which radiated to her back. (Tr. 698). In June of 2017, the Plaintiff was still experiencing severe pain in multiple joints, mostly her hands and feet. (Tr. 690). She reported significant morning stiffness which would last up to three hours before she could start to move

---

[3] It was important for the ALJ to address Dr. Weingarten's absenteeism opinion because: (1) two different treating sources, Dr. Weingarten and PA Fanton, opined that Plaintiff would be absent three days or more a month; and (2) if such opinions were accepted, then Plaintiff would be incapable of employment.

around.  (Tr. 690).  In September of 2017, the Plaintiff continued to have fibromyalgia pain and medication was not improving her symptoms.  (Tr. 703).  Classifying these five appointments as "normal" is not supported by substantial evidence.

Additionally, the defendant notes that these five appointments showed a general normal **physical** examination.  (Tr. 36).  Yet, the Plaintiff's depression was the main contributor to her fibromyalgia.  (Tr. 587).  Absenteeism could result from either physical or mental reasons, or both.  So having a "normal" physical examination does not necessarily contradict missing work due to mental reasons.

During this time period, the record supports several reasons why the Plaintiff might miss work.  In addition to her fibromyalgia, she also treated by her psychiatrist, Dr. Wendy Weinstein, for depression and anxiety.  It is certainly plausible that these impairments might cause the Plaintiff to miss work.

The defendant also argues that Dr. Weinngarten's opinion about absenteeism is contradicted by consultative examiner, Dr. Gregory Fabiano, Ph.D.  This is true. However, the Second Circuit recently noted: "We have frequently 'cautioned that ALJ's should not rely heavily on the findings of consultative examiners after a single examination.'" *Estrella v. Berryhill*, 925 F.3d 90, 98 (2nd Cir. 2019) (quoting *Selian v.Astrue*, 708, F.3d 409, 419 (2d. Cir. 2013)).  The Court then went on: "This concern is even more pronounced in the context of mental illness where, as discussed above, a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health."  *Id.*

In the instant case, Dr. Weingarten is the Plaintiff's treating rheumatologist.  As a

rheumatologist and a treating physician, he is better able to assess the Plaintiff's ability to work than a non-treating psychologist who only examined Plaintiff once. Furthermore Dr. Fabiano is a psychologist, and not a medical doctor.  He is not qualified to treat fibromyalgia, nor could he offer an opinion as to how this illness can limit a person's ability to work.

The defendant also argues that opinions from consultative examiner Dr. Nikita Dave, M.D. and review physicians Drs. Nobel and Dickerson do not support any absences.  Again, defendant is relying upon a one-time consultative report as well as non-examining review physicians in an attempt to refute a treating source opinion.

Defendant's arguments are *post hoc* rationalizations of the ALJ's decision.  "A reviewing court 'may not accept appellate counsel's *post hoc* rationalization for agency action.'" *Snell v. Apfel*, 177 F.3d 128, 134 (2d. Cir. 1999) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).

In sum, the ALJ's RFC determination is not supported by substantial evidence because he did not properly evaluate the treating physician's opinion regarding absenteeism, and the case must therefore be remanded.[4]

## CONCLUSION

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is granted, defendant's motion for judgment on the pleadings (Dkt. No. 9) is denied, and the case is remanded for further administrative proceedings.

---

[4] Plaintiff also argues that the case must be remanded because: (1) the ALJ improperly evaluated the medical opinion of PA Fanton; and (2) the ALJ failed to weigh the medical opinions of consultative examiners Drs. Dave and Fabiano.  The defendant should consider these issues on remand also.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:      May 3, 2021
              Buffalo, New York

                                        MICHAEL J. ROEMER
                                        United States Magistrate Judge